UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAVID BUTLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 12-11054-MLW |
| SHIRAZ BALOLIA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION AND ORDER
## ON DEFENDANT'S MOTION TO DISMISS COUNT IV

April 21, 2016

DEIN, U.S.M.J.

### I.  INTRODUCTION

This matter is before the court on the defendant's Motion to Dismiss Count IV of the

plaintiff's Second Amended Complaint.  In that Count, the plaintiff has asserted a claim for

violation of the Washington Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86, *et seq.*

The parties have consented to having this motion finally decided by this Magistrate Judge

pursuant to 28 U.S.C. § 636(c).  See Docket Nos. 84 & 87.  For the reasons detailed herein, this

court finds that the plaintiff has failed to allege facts which could support a finding that the

alleged wrongful conduct was injurious to the public interest, a requirement of the Washington

CPA.  Therefore, the Motion to Dismiss Count IV (Docket No. 72) is ALLOWED.

## II.  <u>STATEMENT OF FACTS</u>[1]

When ruling on a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the

court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reason-

able inferences.  <u>See</u> <u>Cooperman v. Individual, Inc.</u>, 171 F.3d 43, 46 (1st Cir. 1999).  Applying

these principles, the relevant facts as derived from the plaintiff's Second Amended Complaint

(Docket No. 67) ("Compl.") are as follows.

As described by the plaintiff:

> This action arises from Defendant's breach of a contract for the sale of Butler's
> patents and technology related to safety devices for cutting tools and saws.
> After signing a binding Letter of Intent that contains all material terms to the
> transaction, Defendant has taken the fantastical position that he is entitled to
> rescind the contract based on mutual mistake.  Indeed, there was never a mutual
> mistake relating to any material facts, but the Defendant is alleging such in an
> attempt to renegotiate the deal he struck with Butler.  Defendant's pretextual
> basis for claiming rescission amounts to unfair and deceptive business practices
> in violation of Wash. Rev. Code § 19.86 *et seq*.  Butler seeks damages from
> Defendant's breach of its contractual obligations as well as treble damages,
> attorneys' fees and costs.

Compl. ¶ 1.  Specifically, according to the Complaint, the parties signed a Letter of Intent

("LOI")[2] on or about April 23, 2012 pursuant to which the plaintiff was to sell "Whirlwind"

technology he had developed to the defendant.  <u>Id.</u> at Facts, ¶¶ 2, 12.  The Whirlwind

---

[1]  Additional facts can be found in the First Circuit decision reinstating the plaintiff's claim of breach of a contract to negotiate, <u>Butler v. Balolia</u>, 736 F.3d 609 (1st Cir. 2013), and in Judge Wolf's Memorandum and Order dismissing Counts IV and V of plaintiff's First Amended Complaint, which asserted claims of a violation of Mass. Gen. Laws ch. 93A, and for specific performance.  (Docket No. 63).  In his Order, Judge Wolf granted the plaintiff leave to file a Second Amended Complaint alleging a violation of the Washington Consumer Protection Act.  That Second Amended Complaint is the basis for the instant motion to dismiss.

[2]  The defendant has submitted a copy of the LOI as an exhibit to his Memorandum in Support of Motion to Dismiss.  (Docket No. 73).  This court may consider the LOI in connection with this motion to dismiss since it is integral to the complaint, referenced therein, and is not in dispute.  <u>See</u> <u>Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 267 F.3d 30, 33 (1st Cir. 2001).

technology relates to safety devices for cutting tools such as table saws.  Id. at Facts, ¶ 1.  The

LOI contained, *inter alia*, a confidentiality provision and an exclusivity provision which lasted

until June 20, 2012.  Id. at Facts, ¶ 15; LOI at ¶ 5.  Plaintiff alleges that "[i]n reliance on the LOI

and in compliance with the exclusivity provision, Butler has declined inquiries from other

potential purchasers of the Whirlwind technology."  Id. at Facts, ¶ 16.

The plaintiff contends that the defendant, in an attempt to renegotiate the deal, falsely

"identified several putative 'deficiencies' and 'design around risks' in the Whirlwind patents[,]"

and proposed an entirely different deal for the Whirlwind technology on May 21, 2012.  Id. at

Facts, ¶¶ 19, 22.  The plaintiff further alleges that the defendant sought to rescind the contract

set forth in the LOI due to a non-existent mutual mistake regarding the enforceability of the

patents.  Id. at Facts, ¶¶ 23-29.  Despite contending that the LOI was unenforceable, according

to the plaintiff, "the Defendant refused to waive the exclusivity provision of the LOI."  Id. at 30.

Thus, after May 21, 2012, the plaintiff worked to execute a Purchase Agreement that he

believed reflected the terms of the agreement as set forth in the LOI, while the defendant

insisted on a response to his May 21, 2012 proposal.  Id. at Facts, ¶¶ 31-41.  The deadline for

entering into a Purchase Agreement as set forth in the LOI, June 20, 2012, expired without an

agreement.  Id. at Facts, ¶¶ 38, 41.

In Count I of his Complaint, Butler is seeking a declaration that the LOI is a binding and

enforceable contract.  In Count II, Butler alleges that the defendant breached the contract by

refusing to complete its obligations, failing to negotiate a Purchase Agreement and attempting

to rescind the contract due to an alleged mutual mistake.  In Count III, he alleges that the

"Defendant's actions and conduct of creating pretextual reasons for attempting to rescind the

LOI, refusal to negotiate a Purchase Agreement as required by the LOI and attempting to

renegotiate the terms set forth in the LOI constitutes a breach of the implied covenant of good

faith and fair dealing." Id. at ¶ 61. Finally, in Count IV, Butler alleges that the defendant has

violated the Washington CPA, Wash. Rev. Code § 19.86, *et seq.* In particular, he alleges as

follows:

> 65. Defendant simply had "buyer's remorse" and did not want to go through with the purchase of the Whirlwind technology under the terms, and price, set forth in the LOI.

> 66. Defendant, by alleging problems with the Whirlwind intellectual property in bad faith, falsely claiming mutual mistake, and otherwise refusing to comply with the terms of the LOI, engaged in unfair and deceptive acts or practices.

> 67. Defendant's actions constitute more than a breach of the LOI, but are unjustified excuses fabricated by the Defendant to put himself in a position to negotiate a better deal than the one in the LOI.

> 68. Defendant's unfair or deceptive acts or practices affect the public interest and have the capacity to deceive a substantial portion of the public.

> 69. By refusing to use his best efforts to negotiate and refusing to consummate the deal memorialized in the LOI, yet insisting on the exclusivity provision in the very same document, Defendant prevented Butler from negotiating an agreement with other parties and bringing an important safety feature to market and making it available to the public at a time when public interest on the issue of power tool safety was high. In turn, through Defendant's continued enforcement of the exclusivity provision, it prevented other interested parties from receiving valuable information from Butler concerning the Whirlwind technology and intellectual property.

> 70. Defendant's unfair or deceptive acts or practices have a real and substantial potential for repetition in commerce.

> 71. Defendant's conduct was committed in the course of its business and it actively solicited and targeted Butler.

> 72. Defendant and Butler occupied positions of unequal bargaining power. Defendant is the found and President of Grizzly Industrial, maker of one of the world's largest selection of woodworking and metalworking machinery under

one brand, with a client list of major corporations.  In contrast, Butler, who is largely retired from a prior engineering career, invented and continues to work on the Whirlwind technology in his basement workshop.

73.     Defendant's unfair or deceptive acts or practices have caused Butler to lose the financial terms set forth in the LOI and subjected him to increased costs, expenses, and potential liability.

74.     Defendant's unfair or deceptive acts or practices were willful and knowing.

75.     The unfair or deceptive acts or practices of Defendant have caused and will cause Butler to suffer losses of money and property in an amount to be proven at trial.

Id. at ¶¶ 65-75.  It is the defendant's contention that these allegations, even if accepted as true, fail to state a claim under the Washington CPA.  This court agrees.

### III.  **ANALYSIS**

The Washington CPA declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"  Wash. Rev. Code § 19.86.020.  An individual may bring a private cause of action under the statute.  See Panag v. Farmers Ins. Co. of Wash., 166 Wash. 2d 27, 37, 204 P.3d 885, 889 (2009) (citing Wash. Rev. Code § 19.86.090).  "To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation."  Id. (citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash. 2d 778, 784, 719 P.2d 531, 534-35 (1986)).  "Failure to satisfy even one of the elements is fatal to a CPA claim."  Rush v. Blackburn, 190 Wash. App. 945, 961, 361 P.3d 217, 224 (2015) (quotation omitted).  Here, the defendant contends that Butler has failed to meet the third and fifth factors.  Since this court finds that Butler has failed to allege wrongful conduct affecting the public interest, it will not address the arguments relating to causation.

The "public interest requirement in private actions" is a critical component of the Washington statute, and is one that is not found in many other consumer protection statutes. See Hangman Ridge Training Stables, 719 P.2d at 537.  "Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest.  However, it is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest."  Id. at 538 (internal citations omitted).  Relevant considerations in determining whether public interest is involved in an essentially private dispute include "(1) Were the alleged acts committed in the course of defendant's business? (2) Did the defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?"  Id.  None of these factors are dispositive, nor do they all need to be present.  Id.  Rather, these are just exemplar factors that serve as "indicia of an effect on public interest from which a trier of fact could reasonably find public interest impact."  Id.; see also Rush, 361 P.3d at 228.

In support of his contention that the instant dispute affects the public interest and is not merely a private dispute, the plaintiff argues that he has met three of these criteria.  In particular, he argues that the defendant's actions took place in connection with his business and in his capacity as President of Grizzly Industrial, that Balolia solicited Butler in particular, and that the parties occupied unequal bargaining power.  However, none of these factors increase the "likelihood that additional plaintiffs have been or will be injured in exactly the same fashion" so

as to change this "private dispute to one that affects the public interest." <u>Hangman Ridge</u>
<u>Training Stables</u>, at 719 P.2d at 538.

       As an initial matter, this court notes that the defendant is sued in his individual capacity,
and not as the president of his corporation.  Further, the LOI was entered into by Balolia in his
individual capacity.  Therefore, the allegations of the Complaint do not support the contention
that the allegedly wrongful conduct was committed in the course of defendant's business, *i.e.*,
the operation of Grizzly Industrial.  More importantly, there are no allegations that it was part
of the business of Grizzly Industrial to buy technology.  Rather, it is alleged that Grizzly
Industrial manufactures woodworking and metalworking machinery.  Compl. at Facts, ¶ 72.
Therefore, even assuming that the challenged conduct was undertaken in connection with "the
defendant's business," there are no allegations to support a finding that entering into contracts
of the type at issue here was done more than once, much less routinely.  The Complaint does
not allege facts from which a factfinder can conclude that the defendant would engage in unfair
practices in connection with buying technology from anyone other than the plaintiff.  There-
fore, this factor does not support a finding of public interest impact.  <u>Compare</u> <u>Rush</u>, 361 P.3d
at 229 (where defendant prematurely sold plaintiff's towed vehicle, in violation of statutory
scheme, and there was evidence that defendant through his business routinely handled
impounded vehicles in this manner, there was evidence that the wrongful conduct was likely to
be repeated and thereby affect the public interest); <u>Holiday Resort Comty. Assoc. v. Echo Lake</u>
<u>Assocs., LLC</u>, 134 Wash. App. 210, 226-27, 135 P.3d 499, 507 (2006) (court finds question of fact
exists as to whether unfair and deceptive language in rental agreement "has the capacity to
deceive a substantial portion of the public" where the language was in a form available for

dissemination to more than 500 members of an organization of mobile home park owners or managers); Connelly Co. v. Primo Water Corp., No. 2:14-CV-00340-JLQ, 2016 WL 225663, at *3 (E.D. Wash. Jan. 19, 2016) (claim that defendant made unfair and anti-competitive representations to induce plaintiff to incur expenses in exchange for a (baseless) promise of a long-term distributorship relationship may satisfy the public interest impact requirement of the Washington CPA, where defendant's conduct had potential for repetition since it had terminated its agreements with many other local and regional distributors around the same time).  In the instant case, even assuming that the defendant's wrongful conduct was committed in the course of its business, this factor does not support a finding of impact on the public interest.

The other factors on which the plaintiff relies also do not establish the potential for harm to the public.  Again, to the extent that Balolia solicited Butler, there is no evidence that he solicited others, or that he was in the business of soliciting the purchase of technology. Therefore, the fact of solicitation does not convert the instant private dispute to one that affects the public interest.  Similarly the assertion of unequal bargaining power does not enhance the plaintiff's claim.  As an initial matter, as detailed above, the suit was not brought against Grizzly Industrial, so the existence of unequal bargaining power is not clear.  Moreover, according to the Complaint, the plaintiff is an inventor with a considerable portfolio of patents or patent-pending technology.  He is "not representative of [plaintiffs] subject to exploitation and unable to protect themselves."  Hangman Ridge Training Stables, 719 P.2d at 540 (court does not find allegation of unequal bargaining power to be significant where plaintiffs had business experience and routinely retained an attorney and an accountant).  This is not a case where "form contracts signed by the parties indicate that Plaintiffs and Defendants occupied

[8]

positions of unequal bargaining power." Jankanish v. First Am. Title Ins. Co., No. C08-1147 MJP, 2009 WL 779330, at *8 (W.D. Wash. March 23, 2009) (court denies motion to dismiss claim under Washington CPA that defendant, as escrow agent, routinely wrongfully imposed fees in connection with real estate closings).

Plaintiff also argues that there was harm to the public in that he was unable to bring important safety technology to market at a time when there was a great deal of interest in the issue of power tool safety.  While this may be an issue in calculating the plaintiff's damages for breach of contract, if any, it does not transform his private breach of contract action to one covered by the CPA.  Under the CPA, the general inquiry is whether the defendant's wrongful conduct will injure additional parties "in exactly the same fashion[.]"  See Hangman Ridge Training Stables, 719 P.2d at 538.  Nothing in the plaintiff's Complaint indicates that others may be wrongfully induced into entering into an agreement with the defendant.  Moreover, this generalized and attenuated claim that the plaintiff may have been able to sell his technology to someone else during the two month exclusivity period, which, in turn, could have benefitted the public in the future, does not establish the likely harm to the public that would transform this private dispute into one which affects the public interest.  See Morales-Cruz v. Univ. of P.R., 676 F.3d 200, 224 (1st Cir. 2012) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)).

Finally, the cases which the plaintiff describes as involving "much weaker claims" which survived a motion to dismiss are easily distinguishable, and establish that the instant case fails to state a claim under the Washington CPA.  See Pl. Opp. (Docket No. 81) at 5.  Thus, in

Birkholm v. Wash. Mut. Bank, F.A., 447 F. Supp. 2d 1158, 1165 (W.D. Wash. 2006), the plaintiff

alleged that the Bank's practice in handling impound accounts for taxes and insurance was

improper, and that since the accounts were "common place" and the wrongful conduct had

"the potential for repetition[,]" the dispute involved a matter affecting public interest.  The

court found that the "argument that the conduct at issue in this case affects the public interest

because the conduct is capable of repetition is weak at best[,]" but allowed the plaintiffs "the

opportunity to develop evidence to support this claim."  Id. at 1165-66.  In the instant case,

however, there are not even allegations that the type of contract at issue here is common place

or routinely used by the defendant.  Similarly, in Lawson v. Ocwen Loan Servicing, LLC, No. C10-

5481BHS, 2011 WL 564376, at *1 (W.D. Wash. Feb. 8, 2011), modified as to unrelated issues,

2011 WL 1739997 (W.D. Wash. May 5, 2011), the plaintiff alleged that the defendants

misrepresented the terms of his mortgage, improperly reneged on a promise to modify the

mortgage and violated a forbearance agreement.  The court denied a motions to dismiss the

CPA claim, without any discussion of the requirement of public interest.  Lawson, 2011 WL

564376, at *5.  However, since the defendant in that case was in the mortgage loan business,

there can at least be an inference that the wrongful behavior was likely to be repeated.  No

such repetitive behavior can be inferred in the instant case.

   In short, plaintiff has alleged a private dispute with the defendant that does not involve

potential harm to the public interest.  Such a claim fails to state a claim under the Washington

CPA.  See Frias v. Chris the Crazy Trader Inc., No. 13-cv-01240-MSK-KLM, 2014 WL 2975321, at

*4 (D. Colo. July 2, 2014) (no public impact under comparable CPA where challenged practice of

retaining a portion of the down payment after financing was not obtained allegedly occurred in

only 12 of more than 5,000 car sales: "Given the small number of instances, the Court finds that

they are not sufficient to demonstrate the required public impact"); Lightfoot v. MacDonald, 86

Wash. 2d 331, 336-37, 544 P.2d 88, 91 (1976) (claim that attorney improperly advised client

failed to state a claim under the CPA since plaintiff alleged only that "she and she alone has

suffered damage by reason of the respondent's failure to perform his contract" and, therefore,

did not establish injury to the public).

### III.   CONCLUSION

For all the reasons detailed herein, the Defendant's Motion to Dismiss Count IV of the

plaintiff's Second Amended Complaint (Docket No. 72) is ALLOWED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge